UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH MONTINI, | : | |
| | : | |
|    *Plaintiff*, | : | Civil Case Number |
| | : | 3:16-cv-0587 (VLB) |
| v. | : | |
| | : | |
| XAVIER HIGH SCHOOL | : | |
| CORPORATION OF MIDDLETOWN, | : | December 21, 2017 |
|    *Defendant*. | : | |
| | : | |

**MEMORANDUM OF DECISION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]**

I. Introduction

Plaintiff Joseph Montini brings the instant case pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 41-60, *et seq.*, alleging that his teaching contract was not renewed due to discrimination on the basis of age. Now before the Court is Defendant's Motion for Summary Judgment on both claims. For the reasons that follow, summary judgment is GRANTED.

II. Background

Plaintiff was born on March 9, 1954, making him 61 years-old when he learned his teaching contract would not be renewed. [Dkt. Nos. 27-3, 32-8 ("Pl. Dep.") at 7]. He has a Bachelor's of Science degree in Criminal Justice, and a Master's Degree in Education. *Id.* Defendant hired Plaintiff as a teacher in September 1999. *Id.* at 9. When he was first hired, Plaintiff taught a full course load, or five sections, in the Religion department. *Id.* at 18. Prior to the 2011-2012

1

school year, Plaintiff expressed an interest in teaching subjects outside of the Religion department, and he began teaching a law enforcement elective that he developed, as well as one health class. *Id.* at 18-19. This allowed Plaintiff to reduce the number of religion sections he was teaching to three during the 2011-2012 school year. *Id.* The health class fell within the Physical Education department, and the law enforcement class fell within the Social Studies department. *Id.* at 24. By the following school year, Plaintiff had further reduced the religion classes he taught to two, and by the 2013-2014 school year, he was teaching civics, law enforcement, forensics, and health education, and he no longer taught any religion classes. *Id.* During the 2014-2015 school year, the Plaintiff taught courses in health, marketing, law, and forensics. [Dkt. No. 32-4 at 10; Pl. Dep. at 31, 34]. In addition to his standard teaching responsibilities, Plaintiff developed an on-line health class that was offered during the summer, he invited a DEA agent and a forensic psychologist to speak with his forensics class, he organized a field trip, he monitored the driver's education class four or five times and proctored in the weight room "a number of times," and he served on several committees that required periodic attendance. [Pl. Dep. at 55-62].

On June 10, 2014, Plaintiff signed an employment agreement with Defendant. *Id.* at 9; Dkt. No. 27-4 ("Exh. B")]. Included as an appendix to this agreement was a "Teacher's Annual Contract," which covered the 2014-2015 school year, and which Plaintiff signed on June 5, 2014. [Pl. Dep. at 9; Dkt. No. 27-5 ("Exh. C")]. Article III of the employment agreement provided that either party to the Teacher's Annual Contract could notify the other party by April 5th of

2

an intention not to renew the Teacher's Annual Contract for the following year. [Pl. Dep. at 11; Exh. B at 1]. On March 13, 2015, the Headmaster of Xavier High School, Brother Brian Davis, notified Plaintiff that his contract to teach at the school would not be renewed for the 2015-2016 school year. [Pl. Dep. at 11]. Plaintiff's employment officially ended on June 30, 2015. [Compl. ¶ 20]. The parties agree that the Plaintiff's teaching abilities met expectations, and that his termination was unrelated to his teaching performance. [Dkt. Nos. 27-10, 32-7 ("Davis Dep.") at 42].

A couple of months prior to receiving notice that his contract would not be renewed, Principal Brendan Donahue told Plaintiff that he had met one of Plaintiff's acquaintances, who said that she and Plaintiff were "old friends." [Pl. Dep. at 39]. Upon retelling, Donahue said something to the effect of "oh, yeah, he's real old" in a joking manner. *Id.* Plaintiff also testified that on his birthday (March 9), Davis, aged 68, said, "Today's your birthday," followed by an "off the cuff comment" the substance of which Plaintiff did not remember. *Id.* at 41.

Enrollment at Xavier High School declined from 870 in the 2012-2013 school year to 788 in the 2015-2016 school year. [Dkt. No. 27-6 ("Exh. D") at 6]. The school avoided layoffs following the 2013-2014 school year because a math teacher, a religion teacher, and a social studies teacher resigned voluntarily, and were not replaced. [Pl. Dep. at 35]. However, following the 2014-2015 school year, Defendant determined that this decline necessitated a reduction in force, and the contracts of Plaintiff and three other employees were not renewed. [Exh. D at 9]. Two of the other laid-off employees were teachers aged 39 and 43, and

3

the third was a 40 year-old guidance counselor. *Id.* During the 2014-2015 school year, 66 percent of all employees were above 40 years of age. [Dkt. No. 27-7 ("Exh. E")].

The Teacher's Annual Contract contains a section titled "CONTRACT RENEWAL AND REDUCTION IN FORCE," which states:

> When a reduction in force arises, it is the responsibility of the administration, in consultation with the director/department chairperson, and in accordance with established evaluation procedures, to determine which member of the faculty is to be terminated. A reduction in force means a termination based on the fact that the teacher's job no longer exists due to financial exigencies, decreased enrollment, curriculum changes, or a job elimination due to technology. The administration, in making the decision, shall consider a record of teaching excellence as the primary factor. The following factors shall also be considered: versatility (multi-disciplined ability); a history of serving and ability to serve the broadest needs of the school; seniority; maintenance and enhancement of professional education; and participation in extracurricular activities.

[Dkt. No. 32—6 ("Exh. 6") Art. XI § 1.B.]. Defendant argues that it complied with this provision, and in response to a discovery request seeking "all documents reflecting on how the decision to lay the plaintiff off from his employment was reached by [Defendant]," produced two course information documents, dated January 6, 2015 and March 5, 2015, respectively. [*See* Dkt. No. 32-4 ("Exh. 4")]. These documents list the projected enrollment at Xavier High School, the numbers of sections of each course taught in 2014-2015, and projected number of sections needed for the 2015-2016 school year. *Id.* The documents also list the faculty in each department, the number of courses each faculty member taught in 2014-2015, and the projected number of sections each faculty member would be available to teach in 2015-2016. *Id.*

4

In the January 6, 2015 document, Plaintiff's name is listed on the Social Studies department page, the Business/Computers page, and the Physical Education page, which is consistent with Plaintiff's testimony that he taught law, forensics, marketing, and health. *Id.* at 10-12. There is a section titled "IF CUTS BECOME NECESSARY" at the bottom of most pages. *Id.* On the Social Studies page, Law and Forensics are listed as half year courses (.5 sections) available only to seniors. *Id.* at 10. Also available to seniors are seven additional Social Studies department electives, including "Soc.," Psychology, Leadership, "Modern US," Military History, Geography, and Native American Studies. *Id.* Plaintiff's availability is listed as .5 sections less for the 2015-2016 school year than for the 2014-2015 school year, and the "cuts" section states, "*Will all electives run? (i.e. Economics, one section of Leadership, etc.*" and "*Is there flexibility of a teacher teaching outside of his discipline (I.e. picking up Verbal Skills)?*" *Id.* On the Business/Computers page, Plaintiff is listed as having taught .5 sections in 2014-2015, but having no availability to teach within the department in 2015-2016. *Id.* at 11. The "cuts" section is blank. *Id.* On the Physical Education page, Plaintiff is listed as having taught three sections in 2014-2015 and having availability to teach two sections in 2015-2016. *Id.* at 12. The page also states, "*What will be the teaching responsibilities of Joe Montini and Tony Jaskot?*" *Id.*

In the March 5, 2015 document, Plaintiff is no longer listed as having availability in any subject. Under Social Studies, the course "Forensics" was crossed out by hand, and the projected total number of Social Studies sections needed for the 2015-2016 school year was lowered from 37 to 35. [Dkt. No. 27-8

("Exh. F") at 7; Dkt. No. 27-9 ("Exh. G.") at 4]. Typed at the bottom of the page is, "Will we run forensics?" [Exh. G. at 4]. This question is also crossed out. *Id.* The Physical Education page likewise has reduced the number of teaching sections needed from 12 to 10.5 for the 2015-2016 school year. *Id.* at 5.

In March 2015, Donahue and assistant principals David Sizemore, Andrew Gargano, and Nicholas Cerreta met with Davis to discuss staffing needs for the 2015-2016 school year. [Davis Dep. at 11-12]. Davis testified that at this meeting, the principal and assistant principals presented Davis with a written plan that presented "the number of teaching sections in each department they would need, the courses that would be offered for the coming year, and therefore, would show [Davis] which areas [they] had more teachers that [they were] going to need for the coming year." *Id.* at 13. Davis then answered affirmatively when asked if the plan suggested layoffs and mentioned that Plaintiff would be laid off. *Id.* The following exchange between Davis and Plaintiff's counsel then took place:

> Q: And did [the plan] give reasons for Mr. Montini's layoff?
> A: Yes.
> Q: In the plan?
> A: In the discussion.
> Q: How about in the plan itself?
> A: Yes, it would have shown what classes were or were not needed for the coming year.

*Id.* Davis also testified that "the written plan would have just been what the scheduling . . . needs were." *Id.* at 42. Plaintiff argues that Davis' testimony regarding the "plan" is inconsistent with the substance of the course information sheets produced, suggesting either that the Defendant withheld the complete written plan during discovery, or that Davis lied about the existence of a plan.

6

III. Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (quotation omitted). In addition, "the court should not weigh evidence or assess the credibility of witnesses" on a motion for summary judgment, as "these determinations are within the sole province of the jury." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).

"A party opposing summary judgment 'cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.' At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (quoting *Gottlieb v.*

7

*County of Orange,* 84 F.3d 511, 518 (2d Cir. 1996)). "Summary judgment cannot be defeated by the presentation . . . of but a 'scintilla of evidence' supporting [a] claim." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010) (quoting *Anderson*, 477 U.S. at 251).

IV. <u>Discussion</u>

    A. <u>ADEA Claim</u>

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA's prohibition against discrimination based on age protects employees who are at least forty years of age. 29 U.S.C. § 631(a).

In the Second Circuit, ADEA disparate treatment claims are analyzed using the burden-shifting framework for Title VII claims set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as modified by the Supreme Court's subsequent decision in *Gross v. FBL Financial Services,* 557 U.S. 167 (2009). *See Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 105-06 (2d Cir. 2010). Under this framework, the Plaintiff bears "the initial burden of establishing a prima facie case of discrimination." *Id.* at 106 (citing *McDonnell Douglas*, 411 U.S. at 802). Plaintiff's burden for establishing a prima facie case is de minimis. *Woodman v. WWOR–TV, Inc.,* 411 F.3d 69, 76 (2d Cir. 2005) ("We have characterized plaintiff's prima facie burden as minimal and de minimis." (quotation omitted)). "If the plaintiff does so, the burden shifts to the defendant to articulate 'some legitimate,

8

nondiscriminatory reason' for its action." *Gorzynski*, 596 F.3d at 106 (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant then articulates a legitimate, nondiscriminatory reason for its action, the plaintiff "can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination." *Id.* (citing *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008)). Finally, under the Supreme Court's decision in *Gross*, "'a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the but-for cause of the challenged adverse employment action' and not just a contributing or motivating factor." *Id.* (quoting *Gross*, 557 U.S. at 180).

1. <u>Prima Facie Case</u>

In order to establish a prima facie case of age discrimination, a plaintiff must show "(1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 107 (citing *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000)). The burden of establishing a prima facie case is "not a heavy one." *Id.*

The parties do not dispute the first three prongs of the prima facie case: they agree that (1) the Plaintiff was 61 years old when his contract was not renewed; (2) the Plaintiff was qualified for his employment as a teacher at Xavier High School; and (3) the Plaintiff suffered an adverse employment action when his contract was not renewed. To determine whether the Plaintiff has raised

9

genuine issues of fact with respect to his prima facie claim, the Court must therefore consider only whether Plaintiff's contract termination took place under circumstances giving rise to an inference of discrimination.

"It is well-settled that an inference of discriminatory intent may be derived from a variety of circumstances, including . . . the more favorable treatment of employees not in the protected group." *Trachtenberg v. Dep't of Educ.*, 937 F. Supp. 2d 460, 470 (S.D.N.Y. 2013) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). "An employee is similarly situated to co-employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" *Trachtenberg*, 937 F. Supp. 2d at 471 (quoting *Ruiz v. Cnty. of Rockland,* 609 F.3d 486, 493-94 (2d Cir. 2010)). "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical. In other words, the comparator must be similarly situated to the plaintiff in all material respects." *Trachtenberg*, 937 F. Supp. 2d at 471 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)). "Ordinarily, the question whether two employees are similarly situated is a question of fact for the jury." *Mandell v. Cnty. Of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).

Plaintiff argues that a disproportionate number of older employees were laid off as part of the reduction in force, because 75 percent of those laid off were 40 or older while only 66 percent of the workforce was over 40. However, as the contracts of only four employees were not renewed, this disparity is of no

moment. It is impossible to lay off 66 percent of four employees, and 75 percent is the closest ratio that Defendant could have achieved without cutting a teacher into pieces. Moreover, while a number of younger teachers were not laid off, Plaintiff has identified none that taught a similar combination of elective courses in departments needing cuts.

Evidence giving rise to an inference of discrimination also includes "remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus." *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). The Court cannot conceive of how Davis' "today is your birthday" comment could be considered discriminatory. Colleagues frequently note and celebrate each other's birthdays, and it is generally a sign of a genial workplace, rather than one hostile to older people. At most, Davis' comment is evidence that he knew Plaintiff was over 40 years of age, which the Defendant does not dispute.

Plaintiff has also alleged that Donahue, the principal who participated in a meeting at which layoffs were discussed, made an ageist comment a couple of months before he was laid off. Although the parties do not dispute that Davis made the ultimate employment decision, Plaintiff states that Donahue recommended plaintiff's termination along with the assistant principals. In support, Plaintiff cites Davis' deposition transcript, in which Plaintiff's counsel asked, "[D]o you recall who brought . . . the name of Joseph Montini to you," and Davis responded, "This was in a meeting with the principal and the assistant principals as they presented the entire needs for the coming year, including

11

several layoffs, potential[ly]." [Davis Dep. at 11]. In the interest of considering the evidence in the light most favorable to Plaintiff, the Court will assume *arguendo* that Plaintiff accurately interpreted Donahue's "old friend" comment as being a product of discriminatory animus. The Court will also credit Plaintiff's claim that Donahue recommended laying off the Plaintiff, even though it is unclear from the evidence who among the principal and assistant principals recommended laying off the Plaintiff, and the precise circumstances under which his name came up. While Court does not believe that either of these determinations necessarily gives rise to an inference that Plaintiff was terminated because of his age, the Court will nevertheless proceed to the next stage of the *McDonnell Douglas* analysis.

   2. <u>Legitimate Non-discriminatory Reason</u>

In meeting its burden of articulating a nondiscriminatory reason for taking an adverse employment action, "an 'employer's explanation of its reasons must be clear and specific' in order to 'afford the employee a full and fair opportunity to demonstrate pretext.'" *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 105 (2d Cir. 2001) (quoting *Meiri v. Dacon*, 759 F.2d 989, 996-97 (2d Cir. 1985)); *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981) ("[T]he defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection."). However, "[a]ny legitimate, non-discriminatory reason will rebut the presumption triggered by the prima facie case. The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Paul v. Bank of Am.*, CIV 3:08CV1066J13A, 2010 WL

419405 (D. Conn. Jan. 29, 2010) (quoting *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1335-36 (2d Cir. 1997), *abrogated on other grounds*, *Reeves v. Sanderson Plumbing Prod.*, Inc., 530 U.S. 133 (2000)); *see also Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001) ("The defendant is not required to prove that the articulated reason actually motivated its actions.").

Defendant offers evidence that Plaintiff was laid off solely as a cost saving measure necessitated by lower enrollment. More specifically, Davis testified that Plaintiff was not selected to continue teaching health classes because the two teachers retained "[b]oth had bachelor's degrees and master's degrees in their related phys. ed. fields," as compared to Plaintiff's degrees in criminal justice and education. [Davis. Dep. at 15-16]. Further, Defendant planned to offer only one of the courses Plaintiff previously taught in the Social Studies department during the 2015-2016 school year, and the retained teachers "were mostly full-time social studies teachers with the exception of one, who was very flexible in doing social studies or English as needed." [*Id.* at 17; Exh. 4 at 12]. Finally, the other class Plaintiff taught within the Social Studies department, forensic science, was eliminated because "there would be a decline in enrollment in that particular course." [Davis Dep. at 18; Exh. 4 at 12].

3. <u>Pretext</u>

"[T]o defeat a defendant's properly supported motion for summary judgment, a plaintiff must show that there is a material issue of fact as to whether (1) the employer's asserted reason for discharge is false or unworthy of belief *and* (2) more likely than not the [unlawful basis] was the real reason for the

discharge." *Chertkova*, 92 F.3d at 92 (quoting *Woroski v. Nashua Corp.*, 31 F.3d 105, 108-09 (2d Cir. 1994)). The Plaintiff must also show that but for his age, he would not have been terminated. *Holcomb*, 521 F.3d at 138. "The condition that a plaintiff's age must be the 'but for' cause of the adverse employment action is not equivalent to a requirement that age was the employers *only* consideration, but rather that the adverse employment action[ ] *would not have occurred without it*." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (quoting *Fagan v. U.S. Carpet Installation, Inc.*, 770 F.Supp.2d 490, 496 (E.D.N.Y. 2011)).

Plaintiff does not dispute that a reduction in force was necessary, arguing instead that he should not have been selected as one of the four employees to be terminated. In support of his claim that Defendant's proffered reasons for laying him off were pretextual, Plaintiff argues that the Defendant "disregard[ed] . . . the contractual requirements governing a reduction in force." [Dkt. No. 31 at 26]. The Plaintiff's employment agreement specified that in determining which employees to lay off, the administration "shall consider a record of teaching excellence as the primary factor. The following factors shall also be considered: versatility (multi-disciplined ability); a history of serving and ability to serve the broadest needs of the school; seniority; maintenance and enhancement of professional education; and participation in extracurricular activities." [Exh. 6 Art. XI § 1.B.]. Defendant argues that it did consider these factors, citing in support Davis' testimony. [*See* Dkt. No. 36 at 4].

Davis offered testimony that Plaintiff was chosen not to continue teaching health classes in favor of another teacher, because that teacher "had more

14

experience for the gymnasium section of the course" and coached a sports team. [Davis Dep. at 53]. Davis also mentioned a student questionnaire that indicated a decline in interest for Plaintiff's forensics class. *Id.* at 18. Plaintiff has not offered evidence to dispute Davis' testimony about this health teacher, and he has not argued that interest in his forensics class had not waned or that it was eliminated for any reason other than a decline in student interest. He similarly has not argued or offered evidence (1) that the remaining members of the Physical Education department did not have degrees in fields more relevant to health than criminal justice or education; or (2) that teachers specializing in social studies or cross-specializing in social studies and English would better meet the school's needs than a teacher who would teach only one of the social studies electives the school planned to offer during the 2015-2016 school year. Instead, Plaintiff argues that Davis' testimony is unreliable because he was "untruthful" and "falsely asserted that the Defendant followed a plan in deciding to layoff the plaintiff." [Dkt. No. 31 at 21, 28].

While the Court cannot make credibility determinations on summary judgment, Plaintiff argues that this "dissembling" about the existence of a plan is apparent from the fact that Davis mentioned a "plan" during his deposition, and Defendant produced only the January and March 2015 course information sheets in response to Plaintiff's request that the plan be produced. The problem with this argument is that Davis' description of the "plan" is indisputably consistent with the course information sheets: Davis described the plan as a document that "would have shown what classes were or were not needed for the coming year"

15

and when asked if the plan would have stated reasons for Plaintiff's termination, Davis answered that "the written plan would have just been what the scheduling . . . needs were." [Davis Dep. at 13, 42]. The course information sheets indeed list predicted staffing requirements for each course for the 2015-2016 school year, including how many sections of each course would be needed, and which teachers would be available to teach them. [*See* Exhs. F and G].

Moreover, the fact that no written plan exists which spells out whether and how the specific contractual factors were considered does not show that the course information documents "fail completely as proof that the defendant acted according to a legitimate plan in laying off the plaintiff," [Dkt. No. 31 at 29]. Relying on planned enrollment, demand for courses, and teachers' qualifications to determine whether a teacher should be retained does not exclude consideration of, and is not illegitimate simply because an employment agreement provides, specific factors that administrators must consider. Defendant's explanation of the rationale for deciding which teachers not to rehire supports its contention that it considered teaching excellence, versatility, and ability to serve the school's declining needs in the most cost-effective manner consistent with the provision of quality educational service, taking into consideration the qualifications of the teaching staff. And the course information sheets strengthen that contention.

"ADEA claims arising from the results of a firm's force reduction will generally not lie where the record 'demonstrate[s] that the reorganization was a business decision made on a rational basis.'" *Deebs v. Alstom Transp., Inc.*, 346

F. App'x 654, 657 (2d Cir. 2009) (quoting *Parcinski v. Outlet Co.*, 673 F.2d 34, 37 (2d Cir. 1982)). Deciding to eliminate a teaching position based on the fact that enrollment and interest in the teacher's subject area were declining is certainly a rational business decision, as is the Defendant's decision to retain teachers who have more relevant qualifications and who teach more core classes than electives. Absent evidence tending to show that these proffered reasons for the layoff were false, the Court will not "judge the wisdom of a corporation's business decisions." *Parcinski*, 673 F.2d at 37.

Even if Plaintiff could demonstrate that Davis lied about the existence of a layoff plan, or lied about applying the contractual factors, Plaintiff has not raised a genuine issue of fact regarding whether age-related discrimination was the but-for cause of—or even a motivating factor in—his layoff. The only connection between alleged age-related animus and Davis' decision not to renew Plaintiff's contract is Donahue's "old friend" comment, which only questionably disparages Plaintiff's age. Furthermore, Donahue made this comment "a couple of months" before the employment decision. Stray remarks made months before an employment decision have frequently been held insufficient to raise an inference of discrimination. *See, e.g., Hasemann v. United Parcel Serv. of Am., Inc.*, No. 3:11-CV-554 VLB, 2013 WL 696424, at *7 (D. Conn. Feb. 26, 2013) (citing cases). And even if Donahue actually proposed laying off the Plaintiff—which is also questionable—Plaintiff has offered no evidence that Davis would not have otherwise considered eliminating Plaintiff's position, or that Davis chose to adopt Donahue's proposal for any age-related reason.

"Bolstering this conclusion is the 'well-recognized inference against discrimination . . . where the person who participated in the allegedly adverse decision is also a member of the same protected class.'" *Hasemann*, 2013 WL 696424, at *8 (quoting *Drummond v. IPC Intern., Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005)). The parties do not dispute that Davis is older than the Plaintiff, and therefore in the same protected class as the Plaintiff. Plaintiff argues that because the ages of Donahue and the assistant principals present at the March 2015 meeting are "unknown," the Court must decline to draw an inference against the Plaintiff on this basis. [Dkt. No. 31 at 31]. However, the summary judgment standard does not require the Court to infer that these individuals were not members of Plaintiff's protected class, where Plaintiff could have, but chose not to uncover this evidence during discovery. *See Percoco v. Lowe's Home Centers, LLC*, 208 F. Supp. 3d 437, 446-47 (D. Conn. 2016), *appeal dismissed* (Feb. 14, 2017) ("Plaintiff . . . has been afforded a full and fair opportunity for discovery, [but] has not produced any evidence concerning her replacement's age. Plaintiff cannot defeat summary judgment by relying on her failure to confirm unsubstantiated hunches during discovery."). Because Plaintiff offers no evidence to rebut the inference against discrimination created by the chief decisionmaker's age, he has raised no material issue of fact tending to show that the real reason for Plaintiff's dismissal was age discrimination. Summary judgment as to the ADEA claim must therefore be GRANTED.

B. CFEPA Claim

Plaintiff brings a parallel claim based on the same conduct under the CFEPA. Courts analyze age discrimination claims brought pursuant to the CFEPA using the *McDonnell Douglas* framework. *Asante-Addae v. Sodexo, Inc.*, No. 3:13-CV-00489 VLB, 2015 WL 1471927, at *23 (D. Conn. Mar. 31, 2015), *aff'd,* 631 F. App'x 68 (2d Cir. 2016). However, "to rebut an employer's proffered non-discriminatory explanation under CFEPA a plaintiff need only show that her age was a 'contributing or motivating factor' in bringing about the adverse employment action, as opposed to the but-for cause." *Id.*; *see also Percoco*, 208 F. Supp. 3d at 448. For the reasons set forth in section IV.A.3, *supra*, Plaintiff has not raised any material issue of fact tending to show that age-related animus was a motivating factor in Defendant's employment decision. The Court must therefore GRANT summary judgment as to the CFEPA claim.

V. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [Dkt. No. 27] is GRANTED. The Clerk is directed to enter judgment for the Defendant and to close this case.

                                                              IT IS SO ORDERED.

                                                          _____/s/_____
                                                          Hon. Vanessa L. Bryant
                                                          United States District Judge

Dated at Hartford, Connecticut: December 21, 2017